Hutchinson, Pierce, Connell, Atwood & Scribner, of Portland, Me. (Leonard A. Pierce and Edw. W. Atwood, both of Portland, Me., of counsel), for plaintiffs.

Leland T. Atherton, of Washington, D. C., and John D. Clifford, Jr., U.S. Attorney, of Portland, Me., for defendant.

**DUNTON et al. v. CLAUSON, Collector of Internal Revenue.**

Civil Action No. 178.

District Court, D. Maine, S. D.

Sept. 27, 1946.

PETERS, District Judge.

This is an action brought by the plaintiffs to recover $3,378.49, alleged to be an overpayment of income tax assessed against them for the year 1939 and paid under protest.

It appears that the First National Bank of Bath, finding its capital of $400,000 inconveniently large, took appropriate action under the National Bank Act, 12 U.S. C.A. § 21 et seq., and, with the necessary approval of the Comptroller of the Currency, reduced its capital to $200,000, distributing the difference to its one class of common stockholders ratably, as provided in the order of approval. The change was effected by reducing the par value of the shares from $100 to $50, and stamping the certificates already issued with a legend showing the change. The plaintiffs as stockholders received their shares of the distribution and claimed the sums received to be non-taxable as payments in partial return of capital.

The taxes were collected on the theory that the distribution was essentially equivalent to the distribution of a taxable dividend.

840

It appears that there were sufficient earnings and profits accumulated since 1913 to cover the distribution. No question of bad faith is involved. I see no reason to doubt the assertion of the plaintiffs that the action taken by them and their associates in the bank was proper and reasonable and an exercise of good business judgment in view of the then local banking and business situation.

The only question raised is whether the transaction created a statutory liability for income taxes.

The defendant claims that it did, in view of the provisions of the Internal Revenue Code relating to distributions by corporations. Title 26, U.S.C.A. Int.Rev.Code, § 115.

It seems clear that presumptively the distribution to the stockholders was taxable as a dividend. Section 115(b) provides that, for the purposes of the chapter, "every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits." A dividend is defined in Section 115(a) as "any distribution made by a corporation to its shareholders, whether in money or other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year * * * without regard to the amount of the earnings and profits at the time the distribution was made."

Section 115(g) provides that:

"If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend."

It makes no difference that the corporation did not declare a dividend as such and had no intention of doing so. If the statute fits the action taken the statutory result follows.

In Leland v. Commissioner, 1 Cir., 50 F.2d 523, 525, a corporation returned to its stockholders part of a paid-in surplus, with no thought of declaring a dividend. The court sustained the Board of Tax Appeals in holding the distribution conclusively presumed to be a taxable dividend. Judge Bingham said:

"Nor do we think that Congress exceeded its constitutional power by providing that, so long as a corporation has on hand earnings and profits accumulated since 1913, any distribution to its stockholders should be conclusively presumed to be a dividend out of such earnings or profits. It is evident that Congress intended that a stockholder, to whom distributions were made while a corporation had earnings or profits on hand, should not escape the burden of the income tax law through the directors of the corporation undertaking to make distributions from some other source. The statute does not convert what is not income into income. It simply requires that, while there are earnings or profits, the distributions to the stockholders shall be made from such earnings or profits, and any distributions made while such earnings or profits exist shall be deemed to have been so made."

To consider the distribution as made in pursuance of a plan of recapitalization under Section 112 will not help the plaintiffs. The effect of the distribution is not altered. In Commissioner v. Bedford, 325 U.S. 283, 65 S.Ct. 1157, 1161, 89 L.Ed. 1611, reversing a decision in the Second Circuit, 144 F.2d 272, the court says:

"Recapitalization does not alter the 'effect.' Although the capital of a company is reduced, the cash received is a distribution of earnings and profits and as such falls within the federal tax."

The plaintiffs seek to escape the impact of the Bedford case by calling attention to the language of Judge L. Hand in the opinion in Kirschenbaum v. Commissioner, 2 Cir., 155 F.2d 23, 24, in which he says, commenting on the Bedford case:

"What other test will satisfy the language of § 115(g) we need not now attempt to say; perhaps the section covers all cancellations or redemptions which result in the

distributions of accumulated earnings; perhaps there are some purposes for which a corporation may reduce its shares and distribute such earnings and yet the distribution will not be 'essentially equivalent' to the payment of a dividend. The answers to these questions must be left to future decision."

Plaintiffs, through counsel, advance the suggestion that we may have here one of the "purposes" mentioned by Judge Hand, saying in a brief:

"Judge Hand's conclusions with respect to the Bedford case, as expressed in his opinion in the Kirschenbaum case, make the following question the crux of the case at bar, namely: Whether or not the purpose for which the bank reduced its capital and made such distribution was a sound business purpose sufficient to negative a conclusion that such distribution was essentially equivalent to the distribution of a taxable dividend."

I am quite willing to find and do find that the purpose for which the Bank reduced its capital was a sound business one, but I do not consider that the existence of such a purpose, in view of the other circumstances present, is sufficient to overcome the statutory presumption that the distribution was a dividend for the purpose of taxation. Except for the purpose behind the distribution it had the usual attributes of a dividend, and had the effect of one, and there is nothing in the statute or the regulations that makes the purpose conclusive.

It was obviously not the intention of the directors of the Bank to declare a dividend, but the effect of their action was the payment of a statutory dividend which was taxable.

I do not think the plaintiffs can successfully claim that the distribution was a "partial liquidation" as defined by Section 115(i), in view of the circumstances of the case, under the decisions. There was no intention to do anything beyond returning a part of the capital for which the Bank was responsible, and nothing further was done. To call the transaction a partial liquidation cannot avoid the effect of the statute if it makes such a transaction tax-

able, as I think it does. Beretta v. Commissioner, 5 Cir., 141 F.2d 452; Guild v. Commissioner, 19 B.T.A. 1186; Wilcox v. Commissioner, 9 Cir., 137 F.2d 136.

I cannot think that the fact that the distribution here was authorized by the Comptroller of the Currency, in the course of a reduction of the Bank's capital, makes any difference in the application of the Internal Revenue laws as to taxation. I assume that if Congress had intended to make any such distinction it would have said so. The cases do not indicate that any such exception is implied.

I will sign a judgment for defendant with costs.